IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

WALL CARDIOVASCULAR TECHNOLOGIES, LLC

Plaintiff,

v.

ABBOTT LABORATORIES and
ABBOTT CARDIOVASCULAR SYSTEMS INC.

Defendants.

Civil Action No. 2:08-cv-289-TJW

JURY TRIAL DEMANDED

## ABBOTT'S ANSWER AND COUNTERCLAIMS

Defendants Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively "Abbott"), for their Answer and Counterclaims to the Complaint of Plaintiff Wall Cardiovascular Technologies, LLC ("Wall"), hereby state as follows:

1.      Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint Paragraph 1 and denies them on that basis.

2.      Abbott admits that that its principal place of business is 100 Abbott Park Road, Chicago, Illinois.  Abbott denies the remainder of the allegations in Complaint Paragraph 2.

3.      Abbott admits that Abbott Cardiovascular Systems Inc. is a corporation organized under the laws of the State of California and that its principal place of business is 3200 Lakeside Drive, Santa Clara, California.

4.      Abbott admits that this action purports to arise under the patent laws of the United States, Title 35, United States Code 1 *et seq*.  Abbott further admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Abbott further admits that it does business in this judicial district and that venue is proper in this judicial district under 28 U.S.C. § 1391.  Abbott admits that venue is proper in this judicial district under 28

U.S.C. § 1400(b), but denies that it has committed any act of infringement in this judicial district. Abbott denies any other or different allegations contained in Complaint Paragraph 4 and denies that there is any factual or legal basis for any of Wall's claims.

5.      Abbott admits that U.S. Patent No. 6,974,475 ("the '475 patent") is titled "Angioplasty Stent," that its face indicates that it was issued on December 13, 2005, to W. Henry Wall, and that a copy of what purports to be the '475 patent was included as Attachment A to Plaintiff's Complaint.  Abbott, however, denies that the '475 patent was duly or legally issued. Abbott is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Complaint Paragraph 5 and denies them on that basis.

6.      Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint Paragraph 6 and denies them on that basis.

7.      Abbott admits the allegations in the first two sentences of Complaint Paragraph 7. With respect to the third sentence of Complaint Paragraph 7, Abbott admits that its coronary stent product offerings have been favorably received and have played a role in Abbott's success in the market for vascular stent technology, but denies the remaining allegations in that sentence. Abbott denies the last sentence in Complaint Paragraph 7.

8.      Abbott denies the allegations contained in Complaint Paragraph 8.

9.      Abbott denies the allegations contained in Complaint Paragraph 9.

10.     Abbott denies the allegations contained in Complaint Paragraph 10.

11.     Abbott denies that it infringes the '475 patent, and therefore denies the allegations contained in Complaint Paragraph 11.

12.     Abbott admits that Dr. Wall contacted Abbott to discuss the subject matter contained in U.S. Application No. 07/129,834 before issuance of the '475 patent.  Abbott admits

that Abbott received a letter from Dr. Wall's attorney, dated February 24, 2005, concerning the '475 patent.  Abbott admits that Abbott declined to take a license under the '475 patent.  Abbott denies all other allegations contained in Complaint Paragraph 12.

13.    Abbott admits that Wall purports to seek an enhancement of damages pursuant to 35 U.S.C. § 284, but denies that Wall has any rightful claim for damages or that Abbott has engaged in willful and deliberate misconduct.

14.    Abbott admits that Wall demands a trial by jury on all issues raised in its Complaint.

15.    Abbott admits that Wall seeks a declaration that Abbott has infringed the '475 patent.  Abbott, however, denies that it has infringed the '475 patent and denies that Wall is entitled to any such relief.

16.    Abbott admits that Wall seeks an order permanently enjoining Abbott from infringing the '475 patent.  Abbott, however, denies that it has infringed the '475 patent and denies that Wall is entitled to any such relief.

17.    Abbott admits that Wall seeks an award of damages relating to its infringement allegations, including enhanced damages, pre-judgment and post-judgment interest.  Abbott, however, denies that it has infringed the '475 patent and denies that Wall is entitled to an award of damages.

18.    Abbott admits that Wall seeks an award of its attorney fees, costs, and expenses.  Abbott, however, denies that Wall is entitled to an award of attorney fees, costs, or expenses.

19.    Abbott admits that Wall seeks "such other and further relief as the Court may deem just and proper."  Abbott, however, denies that Wall is entitled to any such relief.

## AFFIRMATIVE DEFENSES

Abbott hereby pleads and affirmatively sets forth the following defenses.

### Noninfringement

20.     Abbott has not infringed any claim of the '475 patent, either directly, indirectly, jointly, literally, or under the doctrine of equivalents.

21.     Abbott has not contributorily infringed or induced infringement of any claim of the '475 patent.

### Invalidity

22.     Every claim of the '475 patent is invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102 , 103, and 112, ¶¶ 1 and 2.

### Unenforceability Due To Inequitable Conduct

23.     The '475 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO").  While examples of inequitable conduct are discussed below, additional examples may be discovered after a reasonable opportunity for Abbott to investigate further and take discovery of Wall and/or third-parties.  Accordingly, Abbott reserves the right to supplement its defenses.

24.     The '475 patent issued from U.S. Application No. 07/129,834 ("the '834 application").  The named inventor on the '834 application, W. Henry Wall, also filed U.S. Application No. 10/293,122 ("the '122 application"), which claims the benefit of the filing date of the '834 application.  The '122 application contains the same specification and drawings as the '834 application.

4

25.     One example of inequitable conduct before the USPTO that renders the '475 patent unenforceable is that Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO, failed to disclose U.S. Patent No. 4,733,665 to Palmaz ("the '665 patent") during prosecution of the '475 patent with an intent to deceive the USPTO.

26.     Upon information and belief, a reasonable patent examiner would have considered the '665 patent material to the patentability of the claims of the '475 patent.  For example, the '665 patent discloses a stent made from a mesh of wire material that includes a biologically compatible coating.  The '665 patent is prior art to the '475 patent.

27.     Upon information and belief, Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO knew of the '665 patent and its materiality during prosecution of the '475 patent yet failed to disclose it to the USPTO.  For example, during prosecution of the '122 application, Mr. Wall identified the '665 patent in an Information Disclosure Citation, dated November 13, 2002.  Moreover, in an Office Action relating to the '122 application, dated December 17, 2003, the USPTO rejected claims of the '122 application based on the '665 patent.  Additionally, in a response dated January 21, 2004, to an office action relating to the '122 application, Mr. Wall included arguments that attempted to distinguish certain claims in the '122 application from the '665 patent.

28.     Despite the overlap of subject matter in the '834 and '122 applications, and despite having knowledge that the '665 patent was material to the prosecution of the '834 application, Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO did not disclose the '665 patent to the USPTO during prosecution of the '834 application.  On information and belief, this failure to disclose the '665 patent was motivated by,

and accomplished with, intent to deceive the USPTO into granting the patent that issued as the '475 patent.

29.     Another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable is that Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose U.S. Patent No. 5,059,211 to Stack *et al*. ("the '211 patent") during prosecution of the '475 patent with an intent to deceive the USPTO.

30.     Upon information and belief, a reasonable patent examiner would have considered the '211 patent material to the patentability of the claims of the '834 application.  For example, the prior art '211 patent discloses a stent with walls having openings to facilitate tissue ingrowth and encapsulation of the stent.  The '211 patent is prior art to the '475 patent.

31.     Upon information and belief, Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO knew of the '211 patent and its materiality during prosecution of the '475 patent, but failed to cite it to the USPTO.  For example, during prosecution of the '122 application, Mr. Wall identified the '211 patent in an Information Disclosure Citation dated November 13, 2002.  In addition, during prosecution of co-pending U.S. Application No. 08/578,504 ("the '504 application"), filed by Mr. Wall, the '211 patent was cited by the Examiner in an Office Action dated December 11, 1996.

32.     Despite the overlap of subject matter in the '834, '122, and '504 applications, and despite having knowledge that the '211 patent was relevant to the prosecution of the '834 application, Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the '211 patent to the USPTO during prosecution of the '834 application.  Upon information and belief, this failure to disclose the '211 patent was motivated

by, and accomplished with, intent to deceive the USPTO into granting the patent that issued as the '475 patent.

33.     Another example of inequitable conduct before the USPTO that renders the '475 patent unenforceable is that Mr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose U.S. Patent No. 4,776,337 to Palmaz ("the '337 patent") during prosecution of the '475 patent with an intent to deceive the USPTO.

34.     Upon information and belief, a reasonable patent examiner would have considered the '337 patent material to the patentability of the claims of the '475 patent.  For example, the '337 patent discloses a stent made from a mesh of wire material that includes a biologically compatible coating.  The '337 patent is prior art to the '475 patent.

35.     Upon information and belief, Dr. Wall and/or his counsel were aware of the writings, publications, and patents of Dr. Palmaz.  For example, during prosecution of the '122 application, patents issued to Palmaz, including the '665 patent and U.S. Patent No. 4,739,762 to Palmaz, and a journal article by Dr. Palmaz, entitled "Expandable Intraluminal Graft:  A Preliminary Study," were identified by Dr. Wall in an Information Disclosure Citation, dated November 13, 2002.  Moreover, during prosecution of the '834 application, an excerpt from a monograph by Palmaz, entitled "Expandable Vascular Endoprosthesis," and a district court opinion, dated June 3, 2005, which related to the '762 patent, were disclosed by Dr. Wall in an Information Disclosure Citation, dated November 14, 2005, after payment of the issue fee for the '475 patent but before issuance.  Upon information and belief, Dr. Wall and/or his counsel selectively withheld prior art materials related to the work of Dr. Palmaz, including the '337 patent, from the USPTO with an intent to deceive.

36.     Upon information and belief, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO were aware of the '337 patent and its materiality to the prosecution of the '475 patent, yet did not disclose it to the USPTO during prosecution of the '475 patent.  Upon information and belief, the failure to disclose the '337 patent was motivated by, and accomplished with, intent to deceive the USPTO into granting the '475 patent.

37.     Another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable is that Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose an article from the Wall Street Journal, dated August 19, 1987, regarding Dr. Palmaz's stent ("the WSJ article"), during prosecution of the '475 patent with an intent to deceive the USPTO.

38.     Upon information and belief, a reasonable patent examiner would have considered the WSJ article material to the patentability of the claims of the '475 patent, including, but not limited to, claims that were originally presented in the '122 application and later added to the '834 application.  For example, the WSJ article discloses a method of using a stent made from a mesh tube to hold open a body vessel to a desired diameter.

39.     Upon information and belief, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO knew of the WSJ article and its materiality during prosecution of the '475 patent.  For example, upon information and belief, Dr. Wall provided a copy of the WSJ article to C.R. Bard, Inc. in a letter dated August 21, 1987, several months prior to filing the '834 application.  In his letter of August 21, 1987, Dr. Wall stated that the stent described in the WSJ article is strikingly similar to his technology.  Despite having knowledge that the WSJ article was material to the prosecution of the '834 application, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO did not disclose the WSJ

article to the USPTO during prosecution of the '475 patent.  Upon information and belief, this failure to disclose the WSJ article was motivated by, and accomplished with, an intent to deceive the USPTO.

40.     Upon information and belief, Dr. Wall and/or others involved in the prosecution of the '834 and the '122 applications also committed inequitable conduct by failing to disclose the WSJ article in connection with Dr. Wall's attempt to establish an invention date prior to his filing date of December 8, 1987, in order to antedate various prior art references, including U.S. Patent No. 4,740,207 to Kreamer ("the '207 patent") and the '762 patent.

41.     On January 7, 1993, Interference No. 102,994 was declared between the '834 application and the '207 patent.  This interference was provoked by Dr. Wall in a response to an office action, dated September 20, 1988.  On June 28, 1995, the Board Of Patent Appeals and Interferences ("the BPAI") ruled against Dr. Wall, holding that "the earliest possible date with which Wall could be credited as showing a conception of the invention is the date of the receipt of this Disclosure Document in the PTO i.e., September 8, 1987."  The BPAI ruled in favor of Dr. Kreamer.  On February 19, 1997, the U.S. Court Of Appeals For the Federal Circuit ("the Federal Circuit") dismissed Dr. Wall's appeal of this ruling for failure to prosecute.

42.     In a "Declaration By Applicant Under Section 1.608(b)," dated September 20, 1988, which was submitted to the USPTO in the '834 application, Dr. Wall attempted to establish an earlier invention date by submitting a copy of a Disclosure Document that he allegedly had previously submitted to the USPTO on December 24, 1984.  Dr. Wall took no action with regard to the 1984 disclosure document within two years and failed to file a formal patent application.

43.     Along with his Declaration, Dr. Wall also included correspondence that allegedly occurred between Dr. Wall and C.R. Bard, Inc. ("Bard") and W.L. Gore and Associates, Inc. ("Gore") relating to his alleged invention.  According to Dr. Wall's testimony from Interference No. 102,994, those communications with Bard and Gore ceased in 1985 and 1986, respectively.

44.     The WSJ article describes "a new technique for propping open clogged arteries" and human clinical trials that were sponsored by Johnson & Johnson to test the technique.  Dr. Palmaz's "intraluminal stent" was discussed in this article.  Dr. Wall testified that he was "sparked" by the WSJ article to reopen communications with Bard and Gore.

45.     On information and belief, in letters dated August 21, 1987, Dr. Wall sent copies of the WSJ article to Bard and Gore.  Dr. Wall, however, did not include the WSJ article in his Declaration or bring this article to the attention of the USPTO.

46.     After reading the WSJ article, in October 1987, Dr. Wall sent correspondence to his patent attorney providing additional disclosure related to his alleged invention.  Dr. Wall testified in connection with Interference No. 102,994 that this additional disclosure related to subject matter developed after October 19, 1987, i.e., after he had read the WSJ article.

47.     Upon information and belief, the decision of Dr. Wall and/or others involved in the prosecution of the '834 application to withhold the WSJ article from the USPTO with intent to deceive in connection with Dr. Wall's attempt to prove an earlier invention date renders the '475 patent unenforceable due to inequitable conduct.

48.     Upon information and belief, Dr. Wall and/or others substantively involved in the prosecution of the '122 application withheld material information during the prosecution of the '122 application that related to Dr. Wall's attempt to predate prior art.  This material information

includes, but is not limited to, the WSJ articled dated August 19, 1987, and documents related to the fact that Dr. Wall modified his alleged invention after reading the WSJ article.

49.     On September 9, 2004, in connection with the '122 application, Dr. Wall submitted a Statement of Prior Invention (37 C.F.R. 1.131) in an "effort to pre-date certain references that are dated prior to the earliest effective filing date of [his] patent application." Those references included the '762 patent to Dr. Palmaz and the '207 patent to Dr. Kreamer.  At the time of the submission of Dr. Wall's Statement of Prior Invention, the pending claims of the '122 application were rejected over the '762, '665, '207 patents and/or U.S. Patent No. 4,665,918.

50.     Dr. Wall mentioned in his Statement of Prior invention that his '834 application (from which the '122 application claimed priority) was placed in an interference with the '207 patent.  Dr. Wall, however, failed to inform the USPTO that in the '834 application and the interference, he had attempted to predate the '207 patent and failed, resulting in a judgment in favor of Dr. Kreamer and a dismissal of Dr. Wall's appeal for failure to prosecute his appeal with the Federal Circuit.

51.     Upon information and belief, Dr. Wall and/or others substantively involved in the prosecution of the '122 application knew of the decisions of the BPAI and the Federal Circuit awarding priority to Dr. Kreamer over Dr. Wall and its materiality during prosecution of the '122 application, but nonetheless intentionally withheld it from the examiner for the '122 application.

52.     Dr. Wall failed to inform the USPTO in connection with his Statement of Prior Invention in the '122 application of the communications with his attorney shortly after reading the WSJ article dated August 19, 1987, and his alleged development of additional subject matter related to his alleged invention in October 1987, after Dr. Wall read a description of Dr. Palmaz'

stent in the WSJ article.  Unlike his Declaration from the '834 application, these materials were omitted from the Statement of Prior Invention submitted in the '122 application.

53.     Upon information and belief, Dr. Wall and/or others substantively involved in the prosecution of the '122 application knew of the WSJ article and evidence that Dr. Wall had abandoned his alleged invention prior to reading the WSJ article, and of Dr. Wall's development of different embodiments of his alleged invention based on information relating to Dr. Palmaz's stent gleaned from the WSJ article, as well as the materiality of this information during prosecution of the '122 application, and still failed to cite it to the USPTO.

54.     Another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable is that, upon information and belief, during prosecution of the '834 application, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO made materially false statements with intent to deceive the USPTO.

55.     On January 7, 1993, Interference No. 102,994 was declared between the '834 application and the '207 patent.  On June 28, 1995, the BPAI ruled against Dr. Wall.  On February 19, 1997, the Federal Circuit dismissed Dr. Wall's appeal of this ruling.  On August 20, 2004, the USPTO issued an office action resuming *ex parte* prosecution of the claims that were not subject to the interference.

56.     The '834 application was deemed abandoned by the USPTO due to Dr. Wall's failure to respond to the Office Action dated August 20, 2004.  On February 14, 2005, Dr. Wall filed a Petition For Revival and a Request To Withdraw And Re-Mail Office Action Dated August 20, 2004.  In the Petition, Dr. Wall stated that "[t]he Office Action that was issued by the Office was the first Office Action issued in this file for several years.  Applicant and his attorney

were not aware of a likelihood that an Office Action would be issued in this application file and did not anticipate that an Office Action would be issued."

57.     Upon information and belief, contrary to the above statement, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO were aware that the '834 application contained claims that were still active after the Federal Circuit's decision of February 19, 1997, related to Interference No. 102,994.  For example, in Interference No. 102,994, the USPTO issued a letter dated November 14, 1996, in connection with Dr. Wall's appeal of the USPTO's decision in Interference No. 102,994, stating "[i]t should be noted that before this interference can be terminated in the Patent and Trademark Office and the files returned to the examiner for *ex parte* prosecution this Office must be in receipt of a certified copy of the court's termination paper."  Dr. Wall's attorney responded to this letter with a Response to Inquiry dated November 18, 1996, stating that the appeal was not pursued and went abandoned for failure to file an appeal brief, but that Dr. Wall did not have a "paper from the Court showing the termination of the case."  Thus, based on the PTO's November 14, 1996 letter, Dr. Wall was aware that prosecution of the '834 application would continue after the interference concluded.

58.     In addition, during prosecution of U.S. Application No. 08/667,604 ("the '604 application"), Dr. Wall filed a terminal disclaimer stating that "[t]he applicant disclaims the terminal portion of any patent that may issue to the above captioned U.S. patent application that extends beyond the expiration of any patent that may issue to U.S. patent application No. 07/129,834."  It is apparent from at least this statement that the applicant knew as of August 12, 1999, that claims of the '834 application were still pending.

59.     Further, on November 13, 2002, Dr. Wall filed the '122 application, describing it as a divisional of the '834 application, and did not refer to any interceding applications also

claiming priority to the '834 application.  Dr. Wall could file a divisional of the '834 application

only if the '834 application was still alive.  Thus, it is apparent from the filing of the '122

application that Dr. Wall knew as of November 13, 2002, that the '834 application was still

pending.

60.     Moreover, in a communication with the USPTO regarding the '834 application,

dated March 17, 2005, Dr. Wall cited MPEP § 1216.01, noting that for "an application received

back from the Court of Appeals of the Federal Circuit, when some claims have been allowed,"

"the proceedings are considered terminated only as to any claims which still stand rejected."

61.     Further, upon information and belief, between February 19, 1997, and February

14, 2005, Dr. Wall actively prosecuted continuations, continuations-in-part and/or divisionals of

the '834 application, including the '122 application, the '504 application, and the '604

application.  Furthermore, on December 7, 1993, Dr. Wall, the sole named inventor on the '834

application, testified in a deposition in connection with Interference No. 102,994 that he was

"very familiar with the patent process."

62.     Upon information and belief, a reasonable patent examiner would have

considered the fact that Dr. Wall was aware that the '834 application contained claims that were

still active after the Federal Circuit's decision of February 19, 1997, in connection with

Interference No. 102,994 to be material to the patentability of the claims of the '834 application.

For example, a reasonable patent examiner would have considered Dr. Wall's awareness material

to deciding whether to grant his February 14, 2005, Petition For Revival and Request To

Withdraw And Re-Mail Office Action Dated August 20, 2004.

63.     Upon information and belief, the named inventor and/or others with a duty of

candor and good faith in dealing with the USPTO knew that the '834 application contained

14

claims that were still active after the Federal Circuit's order dated February 19, 1997, in connection with Interference No. 102,994, knew that this fact was material, and intentionally misled the USPTO into believing that Dr. Wall had no such awareness in order to deceive the USPTO into reviving the '834 application and thereafter granting a patent on it.

64.    Another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable is that, upon information and belief, during prosecution of the '834 application, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO made materially false representations and withheld information relating to the inventorship of the claimed invention.

65.    Several claims of the '475 patent, including independent claim 30, recite providing a sleeve including a coating.  During prosecution of the '122 application, and while the '834 application was pending, Dr. Wall submitted a Statement of Prior Invention attempting to swear behind prior art references cited by the Examiner.  In support for the Statement of Prior Invention, Dr. Wall submitted a number of exhibits that purportedly established his prior invention.  One of these exhibits was a December 18, 1984, letter from Dr. Robert A. Guyton to Dr. Wall stating "I think that placing a prosthetic sleeve on the inside of the coronary artery would be very likely to lead to atherosclerosis."  Dr. Guyton suggested that "[i]t is possible, however, that the inner wall of the sleeve could be treated with a heparinized surface or one of the new thrombogenic surfaces and a better patency could be achieved."  Nothing in Dr. Wall's earlier (or even subsequent) evidence submitted with his Statement of Prior Invention showed that he had invented a sleeve including a coating.  The first evidence that Dr. Wall considered providing a coating on a sleeve came in the '834 application.

66.     Upon information and belief, a reasonable patent examiner would have considered Dr. Guyton's suggestion that "[i]t is possible, however, that the inner wall of the sleeve could be treated with a heparinized surface or one of the new thrombogenic surfaces and a better patency could be achieved" to be material to the patentability of the '475 patent, and in particular to claims reciting providing a coating on a sleeve.  For example, a reasonable patent examiner would have considered Dr. Guyton's statement material in deciding whether Dr. Wall was the sole inventor of the subject matter recited in the claims of the '834 application, as Dr. Wall represented during prosecution of the '834 application.

67.     Despite its relevance to the patentability of the '475 patent, Dr. Wall failed to provide Dr. Guyton's December 18, 1984, letter to the patent examiner in an Information Disclosure Statement during prosecution of the '834 application.  Moreover, while Dr. Wall included Dr. Guyton's letter as an exhibit to his Statement of Prior Invention in the '122 application, he did not provide it during prosecution of the '834 application, despite making a similar effort to swear behind a prior art reference in a Declaration by Applicant Under Section 1.608(b) and Evidence in Support of W. Henry Wall as First Inventor, with which Dr. Wall submitted many of the same exhibits submitted with the Statement of Prior Invention in the '122 application.

68.     Upon information and belief, Dr. Wall and/or others with a duty of candor and good faith in dealing with the USPTO knew that Dr. Guyton's December 18, 1984, letter was material to the patentability of the '834 application and intentionally withheld it from the PTO in order to deceive the USPTO into granting a patent on that application.

**Prosecution History Laches**

69.     Wall is barred from asserting the '475 patent against Abbott's accused products, including the Xience V stent, under the doctrine of prosecution history laches.

70.     The '834 application was filed on December 8, 1987.  The '834 application issued as the '475 patent over 18 years later, on December 13, 2005.  Between December 8, 1987, and December 13, 2005, there were numerous developments in the stent field, including the development of Abbott's Xience V stent.  Upon information and belief, representatives of Wall and/or its corporate predecessors and/or Dr. William Henry Wall were aware of such developments in the stent field throughout the prosecution of the '834 application.

71.     On January 7, 1993, Interference No. 102,994 was declared between the '834 application and the '207 patent.  This interference was provoked by Dr. Wall in a response to an office action, dated September 20, 1988.  On June 28, 1995, the BPAI ruled against Dr. Wall in the interference.  On February 19, 1997, the Federal Circuit dismissed Dr. Wall's appeal of this ruling.

72.     On August 20, 2004, the USPTO issued an office action resuming *ex parte* prosecution of the claims that were not subject to the interference.  The office action dated August 20, 2004, required Dr. Wall to respond within one month, and specified that no extensions of time were available.  Dr. Wall did not respond to this office action until February 14, 2005.

73.     Between February 19, 1997, and February 14, 2005, Dr. Wall could have, but chose not to, continue prosecuting the claims of the '834 application that did not correspond to Count 2 of Interference No. 102,994.  Upon information and belief, Dr. Wall was aware that he could have continued prosecuting these claims.

74.     For example, in connection with Interference No. 102,994, the PTO issued a letter dated November 14, 1996, regarding Dr. Wall's appeal of the decision in Interference No. 102,994, stating "[i]t should be noted that before this interference can be terminated in the Patent and Trademark Office and the files returned to the examiner for Ex parte prosecution this Office must be in receipt of a certified copy of the court's termination paper."  Dr. Wall's attorney responded to this letter with a Response to Inquiry dated November 18, 1996, stating that the appeal was not pursued and went abandoned for failure to file an appeal brief, but that the applicant did not have a "paper from the Court showing the termination of the case."  Thus, in view of the USPTO's letter of November 14, 1996, Dr. Wall was aware that prosecution of the '834 application would continue after the interference concluded, yet took no action after the Federal Circuit dismissed his appeal for failure to file an appeal brief.

75.     Further, during prosecution of the '604 application, Dr. Wall filed a terminal disclaimer stating that "[t]he applicant disclaims the terminal portion of any patent that may issue to the above captioned U.S. patent application that extends beyond the expiration of any patent that may issue to U.S. patent application No. 07/129,834."  It is apparent from at least this statement that Dr. Wall knew as of August 12, 1999, that the claims of the '834 application were still pending.

76.     Moreover, on November 13, 2002, Dr. Wall filed the '122 application, describing it as a divisional of the '834 application, and did not refer to any interceding applications also claiming priority to the '834 application.  Because Dr. Wall could file a divisional of the '834 application only if the '834 application was still alive, it is apparent from the filing of the '122 application that Dr. Wall knew as of November 13, 2002, that the '834 application was still pending.

77.     Further, in a March 17, 2005, communication to the USPTO in connection with the '834 application, Dr. Wall cited MPEP § 1216.01 and noted that, for "an application received back from the Court of Appeals of the Federal Circuit, when some claims have been allowed," "the proceedings are considered terminated only as to any claims which still stand rejected."

78.     Moreover, upon information and belief, between February 19, 1997, and February 14, 2005, Dr. Wall actively prosecuted continuations, continuations-in-part and/or divisional applications of the '834 application, including the '122 application and U.S. Patent Application Nos. 08/578,504 and 08/667,604.

79.     Despite having this knowledge, between February 19, 1997, and February 14, 2005, no action was taken by Dr. Wall with respect to the continued prosecution of the '834 application.  For example, Dr. Wall did not file any status inquiries, despite having filed such status inquiries in connection with the '834 application on at least four prior occasions (e.g., May 12, 1989; April 23, 1990; November 14, 1990; and July 11, 1991).

80.     On January 25, 2005, the claims from the co-pending '122 application were allowed by the USPTO.  Rather than permit the claims from the '122 application to issue, however, Dr. Wall further protracted prosecution of these claims by requesting that they be combined with the still pending claims of the '834 application.  By combining the claims of the '122 application with the claims of the '834 application, Dr. Wall effectively and improperly extended the patent term of the claims that previously were part of the '122 application.  For example, any claims of a patent issuing from the '122 application would have expired on December 8, 2007.

81.     Dr. Wall's unreasonable and bad-faith delay during prosecution of the '475 patent resulted in material prejudice and injury to Abbott.  For example, Abbott continued to invest

significant time and money in testing, researching and developing existing and new and improved products during this delay.

### Res Judicata/Collateral Estoppel

82.     To the extent that it seeks to do so, Wall is barred under the doctrines of res judicata and/or collateral estoppel from asserting that Dr. Wall is the first inventor of the subject matter disclosed in the '207 patent and/or U.S. Reissue Patent No. 34,327 ("the '327 patent") or otherwise asserting an invention date for the '475 patent prior to September 8, 1987.

83.     In Interference No. 102,994, the BPAI determined that the named inventor of the '207 and '327 patents, Dr. Jeffry Kreamer, was entitled to claims 1-9 of both of his patents.  The BPAI also determined that Dr. Wall was not entitled to any claims in the '834 application that overlapped with the interfering subject matter.  According to the BPAI, Dr. Wall failed to provide corroborating evidence that he had conceived of the interfering subject matter prior to the filing date of the application leading to the '207 and '327 patents.  Based on the evidence in the record, the BPAI found that "the earliest possible date with which Dr. Wall could be credited as showing a conception of the invention [in interference] is . . . September 8, 1987."

84.     Upon information and belief, in Interference No. 102,994, Dr. Wall had a full and fair opportunity to litigate his claim of first inventorship of the "count" of the interference, as demonstrated by the fact that Dr. Wall was represented by counsel and that a hearing was conducted on the issue of priority of inventorship.  The BPAI's findings in the interference were necessary to its final judgment in favor of Dr. Kreamer.

85.     Dr. Wall subsequently filed an appeal of the BPAI's final judgment in favor of Dr. Kreamer with the Federal Circuit.  On February 19, 1997, the Federal Circuit dismissed

Dr. Wall's appeal for failure to file a brief within the time permitted by the Federal Circuit Rules and/or the Federal Rules Of Appellate Procedure.

### No Entitlement To Injunctive Relief

86.     Upon information and belief, Wall does not make or sell any medical devices that compete with Abbott's accused products, including the Xience V stent.  Upon further information and belief, Wall does not make or sell any products at all.

87.     Wall is not entitled to any injunctive relief in connection with this action because, *inter alia*:  (1) Abbott has not infringed and is not infringing the '475 patent; (2) the '475 patent is invalid and unenforceable; (3) any purported injury to Wall is neither immediate nor irreparable; (4) even if Wall had suffered some injury (which it has not), there is an adequate remedy at law and monetary damages would be sufficient; (5) the public interest strongly disfavors an injunction under the circumstances present here; and (6) the balance of hardships favors Abbott.

### No Entitlement to Recovery for Sales to the United States Government

88.     Under 28 U.S.C. § 1498(a), Wall is not entitled to any recovery from Abbott with respect to sales to the United States.

### COUNTERCLAIMS

Defendants Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively, "Abbott"), in counterclaim against Plaintiff Wall Cardiovascular Technologies, LLC ("Wall"), hereby allege as follows and demand a trial by jury on all the issues so triable.

### Parties

1.     Counterclaim Plaintiff Abbott Laboratories is an Illinois corporation having its principal place of business at 100 Abbott Park Road, Chicago, Illinois.

2.      Counterclaim Plaintiff Abbott Cardiovascular Systems, Inc. is a California corporation having its principal place of business at 3200 Lakeside Drive, Santa Clara, California.

3.      On information and belief, Counterclaim Defendant Wall Cardiovascular Technologies, LLC is a Texas corporation.

## Jurisdiction and Venue

4.      This Court has subject matter over these Counterclaims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. §§ 1331 and 1338(a).  As demonstrated by the Complaint filed by Wall in this action, and Abbott's Answer and Counterclaims thereto, an actual and justiciable controversy exists between Wall and Abbott regarding the noninfringement, invalidity and unenforceability of the '475 patent.

5.      Wall is subject to personal jurisdiction in this Court as evidenced by, *inter alia*, its consent to jurisdiction in this Court.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Counterclaim Count I

7.      Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

8.      A judicial declaration of noninfringement of the '475 patent is necessary and appropriate to resolve this controversy.

## Counterclaim Count II

9.      Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

10.     A judicial declaration of invalidity of the '475 patent is necessary and appropriate to resolve this controversy.

### Counterclaim Count III

11.     Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

12.     A judicial declaration of unenforceability of the '475 patent due to inequitable conduct is necessary and appropriate to resolve this controversy.

### Counterclaim Count IV

13.     Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

14.     A judicial declaration of unenforceability of the '475 patent due to prosecution history laches is necessary and appropriate to resolve this controversy.

### Counterclaim Count V

15.     Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

16.     A judicial declaration of res judicata and collateral estoppel as to the priority date of the '475 patent is necessary and appropriate to resolve this controversy.

### Counterclaim Count VI

17.     Abbott hereby realleges and incorporates by reference the averments contained in the preceding paragraphs of its Answer and Counterclaims as if fully set forth herein.

18.     A judicial declaration that Wall is not entitled to injunctive relief is necessary and appropriate to resolve this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Abbott prays for entry of judgment

A.      Declaring that Abbott has not infringed the '475 patent;

B.      Declaring that the '475 patent is invalid;

C.      Declaring that the '475 patent is unenforceable due to inequitable conduct;

D.      Declaring that the '475 patent is unenforceable due to the doctrine of prosecution history laches;

E.      Declaring that Wall is barred under the doctrines of res judicata and collateral estoppel from asserting a priority date earlier than September 8, 1987.

F.      Declaring that Wall is not entitled to an injunction barring Abbott from any activities relating to Abbott's accused products, including but not limited to making, using, selling, offering to sell, or importing the accused products in the United States.

G.      Enjoining Wall, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise from directly or indirectly charging infringement, or instituting any further action for infringement of the '475 patent by Abbott's accused products, against Abbott and/or any of its affiliates, customers, licensees or potential customers or licensees;

H.      Declaring this case to be exceptional within the meaning of 35 U.S.C. § 285 and awarding Abbott the attorney fees, costs, and expenses it incurs in connection with this action; and

I.      Awarding Abbott such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Abbott hereby demands a trial by jury for all the issues so triable in this action.


Dated: October 17, 2008                    Respectfully submitted,


                                           /s/ Eric H. Findlay                                    _
                                           Eric H. Findlay
                                           State Bar No. 00789886
                                           Ramey & Flock, P.C.
                                           100 East Ferguson, Suite 500
                                           Tyler, TX  75702
                                           Tel. (903) 597-3301
                                           Fax (903) 597-2413
                                           E-mail: efindlay@rameyflock.com
                                           E-mail: bcraft@rameyflock.com

                                           **ATTORNEYS FOR DEFENDANTS
                                           ABBOTT LABORATORIES AND ABBOTT
                                           CARDIOVASCULAR SYSTEMS, INC.**


### CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October, 2008, a true and correct copy of the foregoing instrument was served upon all parties via electronic mail.

                                           /s/ Eric H. Findlay
                                           Eric H. Findlay